IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MARY CURETON | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| | : | |
| VERIZON SERVICE CORP. | : | NO. 2:05-cv-00213-LDD |

MEMORANDUM OPINION

J. Davis                                                                                                              July 25th, 2005

Presently before the Court is defendant's Motion to Dismiss Counts I, II, IV, V, VI, and VII of the amended complaint and to Strike Plaintiff's Claim for Punitive Damages and Plaintiff's Jury Demand (Doc. No. 14), and plaintiff's response thereto (Doc. No. 17).  For the following reasons, this Court grants defendant's motion.

**I.      Factual and Procedural History**

Plaintiff Mary Cureton ("plaintiff") alleges that on October 1, 2003, her employer, Verizon Service Corporation ("defendant"), notified plaintiff that she was eligible for a reduction in force under the Verizon Management Voluntary Separation Program ("MVSP"), which is a component of the Verizon Severance Program for Management Employees ("SPME").  (See Am. Compl., at ¶¶ 3, 8, 13).  Plaintiff accepted the voluntary reduction in force.  (Id.).  Defendant calculated plaintiff's severance benefits at $267,433.59, with payment to commence on January 1, 2005.  (Id., at ¶ 4).  On November 5, 2003, plaintiff and defendant signed a separation agreement and release memorializing the parties' bargain.  (Id., at ¶ 5).  Plaintiff's last date of employment was November 21, 2003.  (Id., at ¶ 4)

Plaintiff claims that defendant failed to pay plaintiff the benefits identified in the

separation agreement and release, as required by the MVSP. (Id., at ¶ 8). Furthermore, plaintiff alleges that defendant offered to reinstate plaintiff after her termination, but that defendant, in violation of the terms of the SPME, conditioned this reinstatement upon the repayment of the severance pay that plaintiff received in November 2003. (Id., at ¶¶ 12-13).

On December 22, 2005, plaintiff filed a complaint in the Court of Common Pleas for Philadelphia County. Defendant removed the case to federal court on January 18, 2005 (Doc. No. 1), and, on March 23, 2005, plaintiff filed an amended complaint. (Doc. No. 10, 13). Plaintiff's amended complaint brings an array of state and federal law claims against defendant. The state law claims include: breach of contract ("Count I"); constructive termination ("Count II"); equitable estoppel ("Count IV"); negligent misrepresentation ("Count V"); punitive damages ("Count VI"); and unjust enrichment ("Count VII"). The federal claims include: breach of fiduciary duty under 29 U.S.C. §§ 1104 and 1132 of the Employment Retirement Income Security Act of 1974 ("ERISA") ("Count III"); and interference with protected rights under 29 U.S.C. § 1140 of ERISA ("Count VIII"). Plaintiff demands a jury trial. (See Am. Compl., at ¶ 44).

On April 5, 2005, defendant filed a motion to dismiss the state law claims and to strike plaintiff's request for a jury trial and for punitive damages. (Doc. No. 14). Plaintiff filed a response on June 13, 2005. (Doc. No. 17).

**II. Discussion**

Defendant seeks to dismiss Count I (breach of contract), Count II (constructive termination), Count IV (equitable estoppel), Count V (negligent misrepresentation), Count VI (punitive damages), and Count VII (unjust enrichment). (See Def. Br., at 4). Defendant also

seeks to strike plaintiff's demand for punitive damages and a jury trial.  (Id.).

A Rule 12(b)(6) motion may be granted only when it clearly appears that a plaintiff can prove no set of facts in support of the claim which would entitle her to relief.  See Conley v. Gibson, 355 U.S. 41, 45-46 (1957); Robb v. City of Philadelphia, 733 F.2d 286, 290 (3d Cir. 1984).  In applying this standard, this Court "must take all the well pleaded allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the pleadings, the plaintiff may be entitled to relief."  Colburn v. Upper Darby Township, 838 F.2d 663, 665-66 (3d Cir. 1988).

> A. **Counts I, II, IV, V, VI, and VII are preempted by ERISA.**

Section 514(a) of ERISA provides for the preemption of state law claims relating to employee benefit plans governed by ERISA:

> Except as provided in subsection (b) of this section, the provisions of this subchapter and subchapter III of this chapter shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in section 1003(a) of this title and not exempt under section 1003(b) of this title.

29 U.S.C. § 1144(a) (West 2005).  To establish that a claim is preempted by ERISA, defendant must therefore establish: (i) that the plan at issue constitutes an ERISA benefit plan within the meaning of 29 U.S.C. § 1002(1); and (ii) that the state law claims are "related to" the ERISA plan within the meaning of § 514(a).  See, e.g., Pierson v. Hallmark Marketing Corp., 990 F. Supp. 380, 390 (E.D. Pa. 1990).

> 1. **The MVSP, as part of the SPME, is an ERISA benefit plan**.

Defendant contends that the MVSP is one component of the SPME, which, in turn, qualifies as an ERISA benefit plan. (See Def. Br., at 6-8).  On the other hand, plaintiff argues

3

that the severance package plaintiff received fails to meet the definition of an ERISA benefit plan because it involves a lump-sum payment without discretion by the plan administrator, because it requires no complex mathematical calculations, and because it lacks an ongoing administrative scheme. (See Pl. Br., at 4-6).

ERISA defines an employee welfare benefit plan as "any plan, fund, or program" maintained by an employer "for the purpose of providing for its participants or their beneficiaries . . . (A) medical, surgical or hospital care or benefits, or benefits in the event of sickness, accident, disability, death or unemployment . . . ." See 29 U.S.C. § 1002(1). The Supreme Court has declared that severance benefits qualify as an ERISA benefit plan if the payment of benefits requires the establishment and maintenance of a separate and ongoing administrative scheme. See Fort Halifax Packing Co. v. Coyne, 482 U.S. at 1, 11-12 (1987); see Angst v. Mack Trucks, Inc., 969 F.2d 1530, 1538 (3d Cir. 1992) ("severance benefits do not implicate ERISA unless they require the establishment and maintenance of a separate and ongoing administrative scheme"). In evaluating whether a severance benefits plan qualifies as an ERISA-covered plan, "a court must look to the plan as a whole, not just how a plaintiff's specific circumstances play out under that plan." Way v. Ohio Cas. Ins. Co., 346 F. Supp. 2d 711, 717 (D.N.J. 2004).

This Court finds as a matter of law that defendant's MVSP must be analyzed in the framework of defendant's SPME,[1] and that defendant's SPME constitutes an ERISA benefit plan within the meaning of 29 U.S.C. § 1002(1). See Schonholz v. Long Island Jewish Med. Ctr., 87

---

[1] The MVSP is attached as Schedule 4.3A to defendant's SPME. The SPME expressly states that it includes such schedules. (See Verizon's Severance Program for Management Employees, at ¶ 1.1). Furthermore, the MVSP states that "all other provisions of the Plan [the SPME]" apply in determining benefits. (See MVSP, at 4.3A.4).

F.3d 72, 75 (2d Cir. 1996) (noting that "term 'employee welfare benefit plan' has been held to apply to most, but not all, employer undertakings or obligations to pay severance benefits"). First, the MVSP is part of a larger administrative scheme, the SPME, that prescribes requirements for eligibility, the type and amount of benefit received, a process for receiving and appealing claims, and rules to govern the administration of the entire program by the Plan Administrator. (See Verizon's Severance Program for Management Employees, attached as Ex. A to Pl. Response to Def. Mot., at §§ 1-6).[2] Second, defendant's SPME enumerates a formula for the payment of severance benefits, the amount of which differs according to each employee. (Id., at §§ 4.1, 4.4, 4.6; see also Schedule 4.3B). Third, although defendant's SPME authorizes the payment of severance benefits in the form of a one-time lump sum for each eligible employee, this obligation is ongoing and regular, triggered not by a single, unique event, such as the closing of a plant, but by a variety of situations, with the potential to arise on a daily basis, involving the termination of an employee. See Deibler v. United Food and Commercial Workers' Local Union 23, 973 F.2d 206, 209 (3d Cir. 1992) (crucial factor in determining whether ERISA benefit plan exists is whether the employer expressed intention to provide benefits on regular and long-term basis) (internal citations omitted); Angst, 969 F.2d at 1539-1540 (buyout plan that provides lump-sum payment of $75,000 to senior employees who voluntarily leave defendant's employment not covered by ERISA because plan addressed a single event through one-time lump-sum payment). Fourth, defendant's SPME requires the exercise of managerial discretion in determining whether an employee may receive severance benefits; this analysis is performed on a

---

[2]The Court refers to the SPME that applied to plaintiff at the time of the signing of the separation agreement and release and of her departure from defendant's employ. This SPME is attached as Exhibit D to plaintiff's amended complaint. (Doc. No. 13).

case-by-case basis according to individualized criteria, such as the employee's job classification and the circumstances behind the termination.³ See, e.g., Campbell v. Int'l Paper, 83 Fed. Appx. 93, 96 (6th Cir. 2003) ("overwhelming majority of courts–including this one–have concluded that where the reason for termination is relevant to an employee's eligibility for severance benefits, the agreement is an ERISA plan because such a determination requires the exercise of some managerial discretion"); Pane, 868 F.2d at 635 (affirming district court's finding that ERISA covers defendant's plan for awarding severance benefits to executives on basis that plan establishes administrative scheme that evaluates each employees' situation in light of particular criteria).  Fifth, the Court notes that defendant's SPME identifies itself as an ERISA Plan, and contains a description of a participant's rights under ERISA. (See Verizon's Severance Program for Management Employees, at ¶¶ 5.3-5.4); see Linden v. SAP America, Inc., 2004 WL 1047719, at *3 (E.D. Pa. May 6, 2004) (finding separation plan to be ERISA benefit plan in part because plan states that it falls under ERISA and includes a statement of ERISA rights).  Finally, plaintiff has specifically pleaded that the payment of plaintiff's severance benefits is governed by § 502(a)(1)(B) of ERISA, thereby implicitly conceding that defendant's SPME, including the

---

³For instance, defendant's SPME authorizes benefits when a party signs a legal release; and is involuntary terminated for business reasons or is voluntarily terminated due to a refusal to accept certain job modifications, such as reclassification or relocation. (See Verizon's Severance Program for Management Employees, at § 4.1).  On the other hand, an employee is not eligible if the employee voluntarily terminates employment for no reason, if an employee voluntarily terminates employment for any reason other than a job modification initiated by a participating company, or if an employee is involuntarily terminated for misconduct or cause. (Id.).  Nor are certain categories of employees eligible. (Id., at § 2.2).

The Court further notes that defendant's MVSP also requires managerial discretion in determining eligibility for benefits, distinguishing between an employee who undergoes a qualifying voluntary separation and those employees who do not. (See MVSP, at 4.3A.2).

6

MVSP, is an ERISA-covered plan.  (See Am. Compl., at ¶¶ 18-22).

### 2. Counts I, II, IV, V, VI, and VII relate to the MVSP.

Defendant argues that plaintiff's state law causes of action "relate to" the ERISA benefit plan, and therefore, are preempted by ERISA. (See Def. Br., at 4-6).  In response, plaintiff addresses only the state law constructive termination claim, arguing that this claim remains viable, even if the SPME is considered an ERISA benefit plan.  (See Pl. Br., at 6-8).

ERISA preempts all "state laws insofar as they may now or hereafter relate to any employee benefit plan." 29 U.S.C. § 1144(a).  The Supreme Court has construed the phrase "relate to" broadly.  See Ingersoll-Rand Co. v. McClendon, 498 U.S. 133, 138 (1990).  A law "relates to" an employee benefit plan if "it has a connection with or reference to such a plan." Egelhoff v. Egelhoff, 532 U.S. 141, 148 (2001).  In a recent effort to further elucidate this standard, the Supreme Court stated that a state law claim will be preempted if the plaintiff could have brought his claim at some point in time under ERISA's civil enforcement provision, 29 U.S.C. § 1132(a), and there is no other independent legal duty that is implicated by a defendant's actions. See Aetna Health, Inc. v. Davila, 124 S.Ct. 2488, 2496 (2004) (any state law that "duplicates, supplements, or supplants the ERISA civil enforcement remedy" conflicts with the exclusivity of ERISA and is preempted).

#### a. Counts I, IV, V, VI, and VII

Plaintiff's brief fails to address the viability of Counts I, IV, V, VI, and VII in the event of a finding that the MVSP qualifies as an ERISA benefit plan.  (See Pl. Br., at 6-7).  In so doing, this Court reads plaintiff's brief as acknowledging that these counts "relate to" the ERISA benefit plan, and, therefore, are preempted.  Accordingly, this Court grants defendant's motion to

dismiss Counts I, IV, V, VI, and VII of the complaint.

### b.     Count III

Plaintiff argues that Count III is not preempted because plaintiff's right to return to work is not "related to" any employee benefit plan.  (See Pl. Br., at 6-7).  This Court disagrees.

The logic of plaintiff's constructive discharge claim is that because defendant required reimbursement of plaintiff's severance pay as a condition precedent to her return to work, and because the SPME allegedly does not require reimbursement in such a context, defendant constructively terminated plaintiff's employment. (See Am. Compl., at ¶¶ 11-15).  Plaintiff's constructive discharge claim is not merely predicated upon an interpretation of the SPME.  Plaintiff's constructive discharge claim only exists because of defendant's administration of the SPME; indeed, defendant's liability under this claim derives solely from an alleged denial of the rights and obligations codified under the SPME. See, e.g., Davila, 124 S.Ct. 2488, 2498 (2004) (finding state statutory claim preempted by ERISA because interpretation of benefit plans forms an essential part of state statutory claim and because state statutory claim exists only as a result of administration of ERISA-regulated benefit plans).  In other words, plaintiff's constructive discharge claim does not arise from defendant's alleged violation of an independent legal duty, but, instead, stems from defendant's alleged failure to comply with the terms of the SPME, including plaintiff's alleged entitlement to benefits she received.  See, e.g., McClendon, 498 U.S. at 140 (cause of action for wrongful termination based upon employer's desire to avoid paying benefits due under ERISA-covered plan preempted by ERISA because cause of action relates to essence of pension plan and because no cause of action exists if there is no plan); Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41, 47 (1987) (noting "expansive sweep" of ERISA's preemption

clause, which covers common law causes of action, such as "tortious breach of contract"); <u>1975 Salaried Retirement Plan for Eligible Employees of Crucible, Inc. v. Nobers</u>, 968 F.2d 401, 406 (3d Cir. 1992). Accordingly, this Court finds that plaintiff's constructive discharge claim, which through the art of re-labeling attempts to supplement plaintiff's claims under § 502(a) ("Count III") and § 510 of ERISA ("Count VIII"), is preempted by ERISA.[4] See <u>Davila</u>, 124 S.Ct. at 2498-2499 (scrutinizing substance, rather than label, of claim for preemption analysis and noting that state cause of action authorizing remedies beyond those authorized by ERISA § 502(a) does not avoid preemptive scope of ERISA's civil enforcement mechanism).

### B. Punitive Damages

Plaintiff's claim for punitive damages must also be dismissed. To the extent that plaintiff seeks punitive damages as a separate count under state law or as a remedy for plaintiff's various state law claims, this claim is dismissed on preemption grounds. See <u>Pilot Life Ins. Co. v. Dedeaux</u>, 481 U.S. 41, 57 (1987) (state claim seeking punitive damages for improper processing of claim for benefits under ERISA-regulated plan preempted by ERISA). To the extent that plaintiff seeks punitive damages in association with her ERISA claim, punitive damages are not available either under § 502(a), 29 U.S.C. § 1132(a), or under § 510, 29 U.S.C. § 1140, of ERISA. See <u>Massachusetts Mut. Life Ins. Co. v. Russell</u>, 473 U.S. 134, 144-148 (1985) (participants suing for breach of fiduciary duty under § 409 of ERISA, 29 U.S.C. § 1109(a), may not recover punitive damages because no express or implied Congressional intent in statutory text, structure of statutory scheme, or its legislative history allowing for recovery of extra-

---

[4]This conclusion is buttressed by the fact that the plaintiff presents no case law in support of her argument that the constructive discharge claim is not preempted. (<u>See</u> Pl. Br., at 6-7).

contractual damages); Pane, 868 F.2d at 636 (punitive damages not available under § 502(a) of ERISA because "equitable relief" does not include right to punitive damages); Vogel v. Independence Federal Savings Bank, 692 F. Supp. 587, 596 (D. Md. 1988) (punitive damages not recoverable under § 510 of ERISA).

### C. Jury Demand

ERISA provides no right to a jury trial, as the enforcement provisions of the statutory scheme prescribe only equitable relief, which does not encompass the option of a jury trial. See, e.g., Pane, 868 F.2d at 636 (all causes of action under § 502(a) are explicitly equitable and do not trigger right to jury trial); Turner v. CF&I Steel Corp., 770 F.2d 43, 48 (3d Cir. 1985) (only equitable relief, not jury trial, available under § 502(a)(1)(B) of ERISA); see also 27 Fed. Proc. L. Ed. § 61:399 (2005) ("the overwhelming weight of authority is that there is no right to a jury trial in ERISA cases because such cases are equitable in nature, since they were formerly brought under the law of trusts").  Accordingly, plaintiff's request for a jury trial is stricken.

### D. Conclusion

For the following reasons, this Court grants defendant's motion to dismiss Counts I, II, IV, V, VI, and VII, and to strike plaintiff's request for punitive damages and a jury trial. An appropriate order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MARY CURETON | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| | : | |
| VERIZON SERVICE CORP. | : | NO. 2:05-cv-00213-LDD |

ORDER

AND NOW, this 25th day of July 2005, upon consideration of defendant's Motion to Dismiss Counts I, II, IV, V, VI, and VII of the amended complaint and to Strike Plaintiff's Claim for Punitive Damages and Plaintiff's Jury Demand (Doc. No. 14), and plaintiff's response thereto (Doc. No. 17), it is hereby ORDERED that defendant's Motion (Doc. No. 14) is GRANTED. It is hereby further ORDERED that Counts I, II, IV, V, VI, and VII are hereby dismissed; that plaintiff's jury demand is stricken; and that plaintiff's claim for punitive damages is stricken.

BY THE COURT:

/s/
Legrome D. Davis, J.